No. 32,439

The Citizens' State Bank of Morland, *Appellee*, v. Lizzie Nesbitt, *Appellant*, et al.

(52 P. 2d 370)

Opinion filed December 7, 1935.

*F. E. Young,* of Stockton, for the appellant.

*W. L. Sayers* and *Wendell P. Sayers,* both of Hill City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action in the nature of a creditor's bill to set aside two deeds alleged to have been executed by a husband to his wife for the purpose of defrauding creditors, particularly the plaintiff. The trial court found for plaintiff and rendered a judgment and decree setting the deeds aside. Defendant Lizzie Nesbitt appeals.

Appellant first contends she was entitled to a jury trial, which the court refused. The action was one in equity in which the parties were not entitled to a trial by jury as a matter of right. (*McCardell v. McNay,* 17 Kan. 433; *Postlethwaite v. Edson,* 106 Kan. 354, 187 Pac. 688.)

Appellant next contends the finding and decree of the court have no support in the evidence. The facts disclosed by the record may be summarized as follows: For as long as twenty-five years the defendant, Joseph Nesbitt, and his wife, Lizzie Nesbitt, and their family lived upon and operated a farm in Graham county. The title to 680 acres of this land was of record in the name of Joseph Nesbitt and was unencumbered. He transacted his banking business at the plaintiff bank, where he borrowed relatively small sums occasionally. Because of his financial standing he was not asked to give security for these loans. In May, 1932, his notes to the

bank being larger than usual, the bank asked him to make a financial statement, which he did. In this statement he listed the several tracts of his land and placed a value upon each. These totaled $15,000. He also listed ten horses, six mules, sixty head of cattle, one hundred hogs, grain and machinery, valued at $4,300, none of which was encumbered. He listed his only debts as $1,800, the amount of his notes to plaintiff. When his notes to the bank became due in 1933 it was learned he had conveyed all his land, except the 160 acres on which he lived, to members of his family. Two of these tracts he conveyed to his wife by separate deeds, each reciting a consideration of "one dollar and love and affection." He had also made a shipment of the livestock to market in his wife's name and had the proceeds remitted to another bank and there deposited in her name, and he had been drawing on the account. He had also turned over to some of his children his mules, to be paid for after awhile at a price to be determined, and had made some disposition of much of his other personal property. Plaintiff's cashier went to defendants' home and talked with them about the matter and offered to renew the notes if both Mr. and Mrs. Nesbitt would sign them. Mrs. Nesbitt said to her husband: "Well, if you can't renew these notes without me signing them, I will deed the land back to you." He replied: "No, you won't do that. When I give you a present, I want you to keep it." She said: "I won't sign the notes because I didn't make the debts; they are your debts, but you can have the land." He replied: "I don't want the land." He did tell the cashier that he would try to fix it up some way. A few days later he went to the bank and offered to renew the notes with his own signature. The bank declined to renew them, sued on the notes, and obtained judgment. Thereafter it brought this action.

In the trial Mrs. Nesbitt testified that many years ago her husband had bought one of the two tracts in question for $375, had paid $75 in cash and given a mortgage on the land for $300; that later, and about 1908, she received $400 as an inheritance from the estate of her mother and a brother; that she gave this money to her husband, who agreed, in consideration therefor, to deed her this tract of land, but he never had done so until in 1933. She further testified that about 1910 she inherited 40 acres of land from a sister, and from the record it appears she still owns that. She said that about 1915 or 1916 she paid the rents from her own

land, $1,000, to her husband, in consideration of a deed to the other tract of land involved in this action, but did not get the deed for it until in April, 1933. Joseph Nesbitt testified substantially to the same effect. Other members of the family, called as witnesses, knew practically nothing about these arrangements, but testified that rent for the land in question, in some year or years, was paid to Mrs. Nesbitt. There was no record, nor was there any writing, evidencing these transactions between Mr. and Mrs. Nesbitt testified to by them. The court found the evidence introduced on behalf of Lizzie Nesbitt to be insufficient to establish the existence of an indebtedness from her husband to her and insufficient to establish ownership in her of any of the real estate described in the two deeds in controversy. We are of the opinion the trial court was correct in its conclusions.

It is true, as argued by appellant, that a husband and wife may deal with each other with respect to their separate property. However, evidence of such transactions should be clear and convincing before it should be held sufficient to defeat creditors. See *Hardcastle v. Hardcastle*, 131 Kan. 319, 291 Pac. 757, and cases there cited.

We find no error in the record. The judgment of the court below is affirmed.